## In re Anonymous No. 91 D.B. 84

Disciplinary Board Docket No. 91 D.B. 84.

To the Honorable Chief Justice and Justices
  of the Supreme Court of Pennsylvania:

SCHWARTZMAN, *chairman,* January 20, 1987
— Pursuant to rule 208(d)(iii) of the Pennsylvania
Rules of Disciplinary Enforcement, the disciplinary
board of the Supreme Court of Pennsylvania here-
with submits its findings and recommendations to
your Honorable Court with respect to the above pe-
tition for discipline.

## HISTORY OF PROCEEDINGS

In a petition for discipline filed by the office of dis-
ciplinary counsel on October 25, 1984, at No. 91
D.B. 84, it was alleged that respondent [    ] had
violated the following disciplinary rules of the Code
of Professional Responsibility:

DR 1-102(A)(4) — which prohibits an attorney
from engaging in conduct involving dishonesty,
fraud, deceit, or misrepresentation.

DR 1-102(A)(6) — which prohibits an attorney
from engaging in other conduct which adversely re-
flects on fitness to practice law.

DR 2-110(A)(2) — which prohibits an attorney
from withdrawing from employment until she has
taken reasonable steps to avoid foreseeable preju-
dice to the rights of the client, including giving due
notice to the client, allowing time for the employ-
ment of other counsel, and delivering to the client
all papers and property to which the client is
entitled.

DR 2-110(A)(3) — which requires an attorney who withdraws from employment to refund promptly any part of a fee paid in advance that has not been earned.

DR 6-101(A)(3) — which prohibits an attorney from neglecting a legal matter entrusted to her.

DR 7-101(A)(2) — which prohibits an attorney from intentionally failing to carry out a contract of employment entered into with a client for professional services.

DR 9-102(A) — which requires that all funds of clients paid to an attorney, except for advances for costs and expenses, be kept in identifiable bank accounts in the state in which the attorney's office is located and that no funds belonging to the attorney shall be deposited therein except for funds sufficient to pay bank charges and funds belonging in part to the client and in part to the attorney.

DR 9-102(B)(3) — which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to the client regarding them.

DR 9-102(B)(4) — which requires an attorney to promptly pay or deliver to a client as requested by the client funds in the lawyer's possession which the client is entitled to receive.

Pa.R.D.E. 219 — which requires that every attorney admitted to practice in this commonwealth pay an annual registration fee and file an annual signed registration statement with the administrative office of the courts.

Pa.R.D.E. 203(b)(3) — which provides that willful violation of any provision of the Pa.R.D.E. constitutes grounds for discipline.

The matter was assigned to hearing committee [    ] consisting of [      ]. Hearings were held on

March 1, and October 9, 1985, at which petitioner was represented by [A], assistant disciplinary counsel. Respondent was represented by [B].

In its report filed April 9, 1986, the hearing committee found [respondent] ". . . guilty of DR 9-102(A) for commingling clients' funds with respondent's personal funds; DR 9-102(B)(3) for respondent's failure to maintain complete records of funds belonging to the subject clients; P.A.R.D.F. 219 for respondent's failure to pay an annual registration fee and file a proper registration statement with the administrative office of the courts in 1981-82; and Pa.R.D.E. 203(B)(3) for a technical violation of this rule. While troubled by respondent's assertion that she returned $300 in the summer of 1982, which the committee concludes is not credible, the committee finds no fraudulent conduct or failure to perform the legal services requested and finds respondent not guilty of all other charges." The hearing committee recommended that respondent receive a private reprimand by the disciplinary board with a probation arrangement to include the following elements:

(1) That respondent produce for the board a more experienced and unrelated attorney who is willing to monitor her conduct over the next year and report periodically to a subcommittee of the board.

(2) That such an attorney review respondent's current bookkeeping system and suggest any changes that appear necessary.

(3) That the attorney monitor whether respondent is making periodic accountings to her clients of escrow funds.

(4) That respondent enter into clear scope of service letters with her clients at the outset of any engagements to avoid any confusion about what services are being rendered for any quoted fee.

(5) That the monitoring attorney select, from time to time, a sampling of respondent's cases to review the level of communication between respondent and clients.

(6) That, most importantly, the monitoring attorney determine whether respondent truly has the ability and time to continue personally handling her practice's administrative and financial matters especially as, if and when, her practice grows.

Petitioner filed a brief on exceptions to the report. Respondent filed no brief.

At its meeting on July 1, 1986, the disciplinary board determined that the matter be concluded by private reprimand. A notice to appear for private reprimand on October 29, 1986, was sent by certified and regular mail, but respondent failed to appear. The private reprimand was rescheduled to December 15, 1986, and personal service of the notice was made on respondent. Respondent again failed to appear.

This report is submitted in accordance with section 89.205(e) of the disciplinary board rules: "Failure to appear . . . The neglect or refusal of the respondent-attorney to appear before the board for the purposes of private reprimand without good cause shall automatically convert the decision of the board on private reprimand into a recommendation to the Supreme Court for censure, and the office of the secretary shall notify the respondent-attorney, and the office of disciplinary counsel accordingly."

## FINDINGS OF FACT

After review of the record and consideration of the exceptions and brief filed by petitioner, the board has concluded that the findings and conclusions of the hearing committee in this matter are justified

and they are hereby adopted by the board and incorporated herein:

(1) Respondent was contracted by [C], in December 1981, by telephone, whereupon a meeting was arranged to discuss the transfer of certain [E] real estate belonging to [C] to [C's] niece and her husband, Mr. and Mrs. [D] who lived in [ ].

(2) On December 28, 1981, the [D] and [C] met with respondent at an office in [E] and retained her to handle the transfer of the property from [C] to the [D].

(3) Respondent agreed to handle the transfer of the title, to conduct either a title search or a judgment search, and to prepare and record the deed for a fee of $100 plus costs of $14 for the deed recording fee and $360 for the [E] and Pennsylvania transfer taxes.

(4) The [D] issued a check on December 28, 1981, in the amount of $474 payable to respondent. Respondent gave the [D] a receipt and a business card with her telephone number and an office address.

(5) Respondent deposited the check into her personal checking account number [ ] at [F] Bank on December 29, 1981.

(6) Respondent had no escrow account or business account in late 1981, and in fact had no such account until the fall of 1982, and believed such accounts were unnecessary because she had a very small practice, basically representing indigents, often for free.

(7) In 1982, respondent's personal checking account balance fell below the amount the [D] had entrusted to her for payment of the real estate transfer tax.

(8) Respondent secured a title search of the [C] property through [G] Bureau Inc.

(9) In March 1982, respondent discovered a lien had been placed against the [C] property by the Department of Welfare, whereupon she so informed [C], and agreed to investigate the source of the lien.

(10) Respondent obtained the underlying information relating to the lien and so informed [C].

(11) In March or April 1982, [C] responded to respondent's information about the lien by advising her that he would personally check into the matter before paying off the lien. [C] never contacted respondent about this matter.

(12) Respondent never advised the [D] of the existence of the lien and, in fact, failed to return phone calls (except for one) or respond to mail inquiries from the [D] concerning the progress of her work on the matter. Respondent believed she only had to inform [C] about the progress of her work.

(13) [C] advised the [D] by telephone of the lien on the property.

(14) On or about March 1982, [C] contacted respondent and advised her that the [D] no longer wished to pursue this transaction and requested a return of their funds.

(15) Respondent agreed to return the funds.

(16) Respondent in June 1982, told [C] that she had sent the money to him but he advised her he had not received it. Respondent told [C] that she would investigate the matter. Respondent recalls returning $300 of the [D's] money in the summer of 1982. [C] denied ever receiving either a check or letter from respondent.

(17) [C] and the [D] tried unsuccessfully to contact respondent from June 1982, until December 1982.

(18) Respondent testified that she forgot about the case after the summer of 1982 and also that she was extremely careless with her bookkeeping.

(19) Respondent commingled her personal funds with those of her clients and withdrew said funds for unauthorized uses without the knowledge or consent of her clients.

(20) Respondent failed to maintain close communication with her clients.

(21) Respondent did not intentionally commingle or use the [D] funds but rather had an unenthusiastic attitude in 1981 and most of 1982 about a private law practice as a result of a difficult and bitter partnership split in 1980, a loss of confidence in her ability to develop a private practice, a time consuming and emotionally straining distraction in helping her mother who was suffering from cancer, and a rather limited legal practice consisting essentially of pro bono volunteer work with a [E] community group.

(22) In the fall of 1982, respondent began to develop a private practice. Thus, she established a fixed office at [   ] and opened business and escrow accounts thereafter.

(23) In late 1981 and through mid-1982, respondent had no fixed office because she had only a minor private practice. However, she failed to give the [D] or [C] telephone numbers or addresses where she could easily be reached.

(24) By letter dated December 10, 1982, respondent was advised of the complaint concerning this matter made by the [D] to petitioner.

(25) Under cover of a letter dated December 28, 1982, to petitioner, respondent paid the [D] $300 of the funds due them.

(26) By letter dated January 25, 1983, to petitioner, respondent sent a check in the amount of $64 to the [D].

(27) Respondent failed to maintain an escrow account relating to her practice of law for the years 1980 through 1982.

(28) Respondent received escrow funds in another matter, the estate of [H], dec'd, in June 1982, which funds were similarly commingled with her own.

(29) Respondent failed to pay an annual registration fee and identify her status as "active" in the annual registration statement for 1981-82 in the administrative office of the courts because she believed erroneously that, except for her small pro bono and minor practice, she really was inactive.

(30) In her attorney registration statement for the year 1982-83, respondent failed to identify her personal account as one in which she held client funds.

(31) Respondent has received three previous informal admonitions from the disciplinary board which involved the following:

(a) signing a pleading where the client said that no authority was given, a 1980 admonition,

(b) a check to the registrar of wills that was not honored by the bank, a 1980 admonition, and

(c) a charge of commingling of escrow funds for services to the estate of [H] which arose from the same set of facts as the instant matter, a 1984 admonition.

(32) The first two informal admonitions involved matters which occurred during a period of intense dispute and termination of a partnership arrangement between respondent and another attorney and respondent has stated that these incidents were the result of lack of cooperation and fighting with her former partner.

(33) The instant matter and the charge of commingling involving the escrow funds in connection

with the estate of [H] also followed the period of intense dispute with her former partner where respondent ceased legal practice for a year, was involved in the fallout from the partnership split, and then was involved with caring for her mother who had cancer. The period 1980 through early 1982 was a period of intense emotional trauma for the respondent.

(34) Since the middle of 1982, respondent has:

(a) been able to develop a private practice which is still small and involves perhaps one or two matters that involve escrow funds,

(b) stayed current on bills associated with her practice,

(c) has established a bookkeeping system for her small practice which she personally maintains.

(35) The instant proceedings have impressed upon the respondent the problems that are associated with commingling funds, even though not for fraudulent purposes, and failing to promptly account for the status of those funds to clients.

(36) Respondent has demonstrated a deep and sincere commitment to civic and pro bono legal work and, in fact, when she resumed her career (and well before the instant petition was filed) focused almost exclusively on that type of work in the [E] community through two different civil associations.

(37) Several clients testified regarding respondent's ability, diligence and care in handling their legal matters and the executive director of a civic association in [E] supported respondent's commitment to her clients and her professional competence.

(38) Respondent has returned $364 to [D] in this matter and has made restitution in the [H] matter.

## RECOMMENDATION

Because of respondent's failure to appear for private reprimand on October 29, 1986, and December 15, 1986, as ordered, the board, pursuant to section 89.205(e) of the disciplinary board rules, recommends that respondent be ordered to appear before the Supreme Court for public censure. Costs, if any, are to be paid by respondent.

## ORDER

And now, this September 3, 1987, a rule having been issued by this court on May 29, 1987, to show cause why respondent should not be disbarred and no response thereto having been filed of record, the rule is hereby made absolute; and it is

Ordered that [respondent] be and she is disbarred from the bar of this commonwealth, and she shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to Rule 208(g), Pa.R.D.E.